UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| WENDY UNTERSHINE, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>v.<br><br>PATENAUDE & FELIX, A.P.C.,<br><br>    Defendant. | Case No.: 17-cv-1612<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Wendy Untershine is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

6. Defendant Patenaude & Felix, A.P.C. ("Patenaude") is a foreign professional services corporation with its principal place of business located at 4545 Murray Canyon Road, Third Floor, San Diego, CA 92123.

7. Patenaude is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Patenaude is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. Defendant is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

9. On or about October 26, 2017, Patenaude mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "TD Bank USA, N.A. / Target Credit Card." A copy of this letter is attached to this Complaint as <u>Exhibit A</u>.

10. Upon information and belief, the alleged debt referenced in <u>Exhibit A</u> was incurred for personal, family or household purposes, namely through use of a store-branded credit card at Target Stores.

11. Upon information and belief, <u>Exhibit A</u> is a form letters, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, <u>Exhibit A</u> is a form debt collection letter used by Patenaude to attempt to collect alleged debts.

2

13. Upon information and belief, Exhibit A was the first letter Patenaude sent Plaintiff regarding the alleged debt to which the letter refers.

14. Exhibit A lists the "Total Due" on the account as $4,483.19.

15. Exhibit A also lists the "Minimum Due" on the account as $169.00.

16. On or about October 25, 2017, about one day before Plaintiff received the collection letter, Exhibit A, from Patenaude, Target Card Services mailed a billing statement to Plaintiff regarding the same account. A copy of this billing statement is attached to this Complaint as Exhibit B.

17. Exhibit B lists a "New Balance" of $4,483.19, which is the same amount listed as the "Total Due" in Exhibit A.

18. Exhibit B, however, lists a "Minimum Payment Due" of $777.00, which is significantly greater than the "Minimum Due" of $169.00 listed by Exhibit A.

19. Exhibit A is thus false or misleading as to the amount necessary to bring the account current.

20. Additionally, by listing both a "Total Due" and "Minimum Payment Due," Exhibit A is misleading as to the amount of the debt Patenaude sought to collect.

21. Moreover, Patenaude lacked the legal authority to demand the total balance of the account. Credit card transactions are, by definition, consumer credit transactions. Wis. Stat. § 421.301(10).

22. Upon information and belief, at the time Patenaude sent Exhibit A to Plaintiff, the creditor had not provided Plaintiff with notice of her right to cure the default on her account, which is required before accelerating the debt. Wis. Stat. § 425.105(1), (2). TD Bank and Patenaude thus lacked the right to accelerate the maturity of the credit card account.

23. Lastly, Exhibit A is printed on Patenaude's letterhead, which identifies the organization as the "Law Offices of Patenaude & Felix. A.P.C. – A Professional Legal Corporation."

24. Beneath the body of the collection letter, Exhibit A also includes a signature line reading "Law Office of Patenaude & Felix," which appears to bear a signature.

25. Exhibit A thus falsely implies that an attorney was meaningfully involved in the collection of the alleged debt in October 2017.

26. The unsophisticated consumer, receiving a letter from a law firm, believes that that law firm has been hired to sue the consumer, and that an attorney is personally and professionally involved in the consumer's file.

27. The Seventh Circuit has stated: "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir.1996).

28. "If a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file." *Id.*; *see also Clomon v. Jackson,* 988 F.2d 1314, 1320-21 (2d Cir. 1993).

29. The Third Circuit has held that collection letters purporting to be "from an attorney" when there was no actual attorney involvement violated the FDCPA, even though the

4

letters included an attempted disclaimer of attorney involvement. *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 995 (3d Cir. 2011).

30. Other Circuits have held that "a lawyer acting as a debt collector must notify the consumer, through a clear and prominent disclaimer in the letter, that the lawyer is wearing a 'debt collector' hat and not a 'lawyer' hat when sending out the letter."

31. Exhibit A does not include any language in the nature of a disclaimer of attorney involvement, let alone a "clear and prominent disclaimer" like the one discussed in *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 361-62 (2d Cir. 2005).

32. Patenaude is a high-volume debt collector.

33. Upon information and belief, at the time Exhibit A was mailed to Plaintiff and the class, no attorney had assessed the validity of the alleged debts to the standards required of an attorney.

34. Upon information and belief, from the time that consumer debts are placed with Patenaude for collection until the time that a legal complaint is drafted, the only employees of Patenaude who are directly involved in the collection process of consumer debts are non-attorneys.

35. Moreover, Patenaude is frequently engaged to send collection letters to consumers with no intent that Patenaude will ever file a lawsuit to collect the debt.

36. Upon information and belief, a significant portion of Patenaude's debt collection activities during that time period consists of computer-automated processes, including the sending of computer-generated form letters like Exhibit A.

37. Upon information and belief, at the time Exhibit A was mailed to Plaintiff and the class, no attorney associated with Patenaude had reviewed any documentation underlying the

alleged debts, including but not limited to any contract, payment history or any other documents establishing or evidencing the alleged debts.

38. Upon information and belief, at the time <u>Exhibit A</u> was mailed to Plaintiff, no attorney associated with Patenaude had reviewed anything relating to Plaintiff's account. Instead, a computer or a non-attorney assistant at Patenaude or a third party mailing company generated and mailed <u>Exhibit A</u> as part of a batch of identical, except for personal information, form debt collection letters.

39. Upon information and belief, at the time <u>Exhibit A</u> was mailed to Plaintiff and the class, no attorney associated with Patenaude had exercised the professional judgment of an attorney that Plaintiff or any other class member was delinquent on his or her debt and a candidate for legal action, nor was any attorney associated Patenaude meaningfully involved in the decision to send <u>Exhibit A</u> to Plaintiff and the class.

40. Upon information and belief, no attorney associated with Patenaude personally reviews each class member's collection letter in any meaningful sense, before the letter is mailed.

41. Upon information and belief, no attorney associated with Patenaude makes an individualized assessment of the class member's circumstances or liability, before <u>Exhibit A</u> is mailed to each class member.

42. Plaintiff was confused by <u>Exhibit A</u>.

43. The unsophisticated consumer would be confused by <u>Exhibit A</u>.

44. Plaintiff had to spend time and money investigating <u>Exhibit A</u> and the consequences of any potential responses to <u>Exhibit A</u>.

6

Case 2:17-cv-01612-WED    Filed 11/20/17    Page 6 of 14    Document 1

45. Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiff on the consequences of Exhibit A.

### *The FDCPA and WCA*

46. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

47. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection

7

practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

48. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

49. 15 U.S.C. § 1692e(3) specifically prohibits: "The false representation or implication that any individual is an attorney or that any communication is from an attorney."

50. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

51. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

52. 15 U.S.C. § 1692g(a)(1) requires that, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," that a debt collector provide notice of "the amount of the debt."

53. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

54. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

55. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

56. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

57. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

58. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

59. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

60. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly

9

adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

61. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

62. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

63. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

64. Wis. Stat. § 427.104(1)(k) specifically prohibits a debt collector from using "a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney−at−law when it is not.

65. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

### **COUNT I – FDCPA**

66. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

67. By listing a different amount as the "Minimum Due" from the amount listed as the "Minimum Payment Due" by the creditor, <u>Exhibit A</u> is false or misleading as to the minimum amount necessary to bring the account current.

68. By listing both a "Minimum Due" as well as the "Total Due," <u>Exhibit A</u> is misleading as to the amount of the debt sought by Patenaude.

10

Case 2:17-cv-01612-WED    Filed 11/20/17    Page 10 of 14    Document 1

69. By listing the total balance of the account as the "Total Due," Exhibit A is misleading as to the legal status of the alleged debt and threatens to take any action that cannot legally be taken.

70. Defendant thereby violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), 1692f, and 1692g(a)(1).

## COUNT II – FDCPA

71. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

72. Exhibit A creates the false impression that an attorney at Patenaude had personally reviewed the circumstances of Plaintiff's and class members' alleged debts and Exhibit A itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time that the letters were mailed to Plaintiff and class members.

73. Before mailing Exhibit A to Plaintiff and the class, no attorney at Patenaude had any meaningful involvement with Plaintiff's or class members' alleged debts or the letters. *Avila*, 84 F.3d at 229; *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

74. Defendant thereby violated 15 U.S.C. §§ 1692e, 1692e(3), 1692e(10), and 15 U.S.C. § 1692f.

## COUNT III – WCA

75. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

76. By listing a different amount as the "Minimum Due" from the amount listed as the "Minimum Payment Due" by the creditor, Exhibit A is false or misleading as to the minimum amount necessary to bring the account current.

77. By listing both a "Minimum Due" as well as the "Total Due," Exhibit A is misleading as to the amount of the debt sought by Patenaude.

78. By listing the total balance of the account as the "Total Due," Exhibit A is misleading as to the legal status of the alleged debt and threatens to take any action that cannot legally be taken.

79. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT IV – WCA

80. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

81. Exhibit A creates the false impression that an attorney at Patenaude had personally reviewed the circumstances of Plaintiff's and class members' alleged debts and Exhibit A itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time that the letters were mailed to Plaintiff and class members.

82. Before mailing Exhibit A to Plaintiff and the class, no attorney at Patenaude had any meaningful involvement with Plaintiff's or class members' alleged debts or the letters. *See Avila*, 84 F.3d at 229; *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

83. Defendant violated Wis. Stat. § 427.104(1)(k).

## CLASS ALLEGATIONS

84. Plaintiff brings this action on behalf of a Class consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt incurred for personal, family or household purposes, (d) Between November 20, 2016 and November 20, 2017, inclusive, (e) that was not returned by the postal service.

85. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

86. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibit A</u> violates the FDCPA.

87. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

88. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

89. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

90. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)  actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: November 20, 2017

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com